UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| V. | ) No. S1-4:18CR00828 RLW |
| MARKESE WATKINS, A/K/A "Lil Mark," | ) ) ) |
| Defendant. | ) |

**UNITED STATES' SENTENCING MEMORANDUM**

Comes now the United States, by U.S. Attorney Sayler Fleming and Assistant U.S. Attorneys Paul J. D'Agrosa and Catherine Hoag, and for their sentencing memorandum, submit the following:

**INTRODUCTION**

Defendant faces sentencing, having pleaded guilty to a conspiracy to commit Hobbs Act robberies (Count 1), three separate armed robberies (Counts 2, 10 and 12) and two counts of possessing a firearm in furtherance of a crime of violence (Counts 11 and 13). The United States has agreed to dismiss three other counts (Counts 3, 16 and 17).

The final, revised presentence investigation report has been filed with the Court and neither party has any objections to the legal or factual conclusions reached by the Probation Office. The adjusted total offense level for Counts 1, 2, 10 and 12 is **23**, for an advisory sentencing range of **51 to 63 months imprisonment**. The total offense level for Counts 11 and 13 is the statutory, mandatory minimum sentence of **84 months as to each count, consecutive to each other and consecutive to the other counts**, for a mandatory consecutive sentence of 168 months imprisonment. The Defendant's criminal history category is II. Therefore, at the low end of the

advisory guidelines, Defendant faces a sentence of 219 months imprisonment and a sentence of 231 months at the high end of the advisory guidelines. According to the Guilty Plea Agreement (Doc. #237), the Defendant cannot request a sentence below 168 months or 14 years.

## **ARGUMENT**

The Defendant has addressed various sentencing factors in his sentencing memorandum (Doc. # ). He advocates for a substantial reduction/variance in his sentence. The United States submits the following to aid the Court in fashioning a sentence that addresses the factors set forth in 18, United States Code, Section 3553(a), in order to arrive at a sentence which is sufficient but not greater than necessary to achieve the statutory purposes of punishment. *18, U.S.C. §3553(a)*; *United States v. Booker*, 125 S.Ct. 738 (2005).

The Court shall consider the following:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed – to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established under the Sentencing Guidelines;

(5) any pertinent policy statements;

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

The investigation of Markese Watkins and his co-conspirators uncovered more than 20 armed robberies which had heretofore gone unsolved. The *modus operandi* of the defendants remained consistent throughout the course of the conspiracy, which accounted for armed robberies committed between July 2018 through October 2018, and only ended upon Jeremy Wings' arrest. The robbery of Domino's and Papa Johns, committed on August 31, 2018 and September 16, 2018 respectively) are illustrative.

### **Robbery of Domino's on Lindell**

Two masked gunmen (Lloyd Wings and Markese Watkins) entered the Domino's and demanded that the employees open the cash registers and the safe. An accomplice (Jeremy Wings) waited in a car parked some distance from the store and acted as a lookout and getaway driver. While in the store, Lloyd Wings and Markese Watkins brandished their guns to get the employees to comply with their demands.[1] After demanding the employee to open the safe, the robbers waited while the time-delay cycled and allowed the safe to be opened. The time-delay on the safe was designed to deter robbers, as most armed robbers prefer to get in and out of a business as fast as they can and grab whatever cash is readily available.

However, in this robbery, Lloyd Wings and Markese Watkins waited for the time-delayed safe to open (approximately 10 minutes). They paced back and forth, brandishing their firearms and yelling threats and commands to the employees. Jeremy Wings waited in the car. After the

---

[1] The guns used most consistently throughout the conspiracy were a purple handgun and a mini-Draco, which mimics an AK-47 and fires rifle rounds. The Draco was present during this robbery.

safe opened, they grabbed the money and left. They escaped the area in the getaway vehicle and split up the proceeds.

The experienced investigators with the St. Louis Police Department and FBI were shocked and surprised that the armed robbers waited as long as they did during the Domino's robbery (and other robberies). The opportunity for violence to occur and deadly harm to come to the victims was multiplied as the armed men waited for the safe to open. They were holding employees (and sometimes customers) hostage while the time-delay ticked off. Domino's was open for business with customers and delivery drivers potentially coming in and out of the business. The fact that no one entered and surprised the robbers is a miracle as that could have led to a deadly encounter.

### Robbery of Papa John's

Two masked gunmen (Deandre Wings and Markese Watkins) entered the Papa John's and while a customer stood at the counter picking up her pizza, Watkins and D. Wings brandished firearms and demanded cash. As D. Wings acted as a lookout near the front of the store, Watkins went to the rear of the store, ordered an employee to the ground and then struck the employee in the face/head with his pistol. Watkins then demanded the cash from the register. A customer and employee managed to escape during the robbery. Watkins and D. Wings then fled the business in Jeremy Wings' car.

### The number of robberies

In fashioning an appropriate sentence for the Defendant, the Court should consider the following. Darnell Duncan, who has already been sentenced to serve 90 months in prison, was involved in three (3) robberies. Deandre Wings, who has already been sentenced to serve fourteen (14) years imprisonment, was involved in five (5) robberies and Kirk Torrence, who has been

sentenced to serve 120 months in prison, was involved in four (4) to five (5) robberies. The remaining defendants are still awaiting sentencing but are responsible as follows:

Jeremy Wings: 16-19 robberies

Markese Watkins: 15 robberies

Lloyd Wings: 15 robberies

The Court should be aware that fifteen (15) robberies occurred from July through September 2018. Lloyd Wings was arrested following his involvement in a shooting in early September. He was returned to prison on a parole violation, not yet having been identified as one of the robbers. As he communicated, cajoled and encouraged the co-conspirators from prison, discussing plans to continue his criminal conduct upon his release (the jail calls confirm that Lloyd Wings thought he was getting released in October 2018), the other defendants continued to commit robberies. At least seven (7) robberies were committed after Lloyd Wings was returned to prison for the parole violation in September 2018. The robberies only stopped when Jeremy Wings was arrested, admitted part of his involvement in the crime spree, and implicated the others. He also called two paramours from jail and described how he was pursued by the FBI, questioned about more than twenty robberies, and instructed the women to get rid of incriminating evidence. He also communicated with co-conspirators Deandre Wings and Markese Watkins, imploring them to lay low or get out of town and to get rid of incriminating evidence.

The United States submits that the conspiracy was alive and well after Lloyd Wings was arrested and that Markese Watkins played an integral role in the planning and carrying out robberies before and after Lloyd Wings' arrest. Watkins aided and abetted the conspiracy after Jeremy Wings was arrested by going over to Wing's house and disposing of evidence. When Jeremy Wings was pursued by police in his black Pontiac (a vehicle consistently seen at the scene

of multiple robberies), he was with Markese Watkins and Wings was armed with a black handgun. He allowed Watkins to escape capture and then attempted to run on foot, discarding his loaded pistol. The pistol was recovered and identified as having been used in some of the earlier robberies.

The United States therefore submits that the nature of the offense and the history and characteristics of Markese Watkins calls for a substantial sentence of imprisonment.

Attached hereto are Government's Exhibits 2 and 3. Exhibit 2 is a chronological summary of most of the robberies and the recovery of the purple handgun. Exhibit 3 contains photographs of the Draco, after it was recovered during the investigation.

The advisory guidelines recommend a sentence of between 219 and 231 months, before the Court takes into account any motions for a downward departure or variance. It is also important to point out that the Defendant is not being held accountable for all of the robberies he committed nor for which he was indicted. Further, the United States agreed to dismiss two counts involving the brandishing of a firearm in furtherance of robberies. Had Defendant been convicted of those counts, he would have faced an additional, consecutive and mandatory sentence of 14 years imprisonment.

## CONCLUSION

The United States submits its sentencing memorandum in hopes of aiding the Court in fashioning an appropriate sentence, given all of the factors set forth in Title 18, United States Code, Section 3553(a). The government believes a total, aggregate sentence of 168 months imprisonment is appropriate.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

*/s/ Paul J. D'Agrosa*
PAUL J. D'AGROSA (#36966MO)
*/s/ Catherine Hoag*
CATHERINE HOAG (#67500MO)
Assistant United States Attorneys
111 S. 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of August, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

*/s/ Paul J. D'Agrosa*